IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02533-MSK-MEH

NESTLE PREPARED FOODS COMPANY,

      Plaintiff,

v.

POCKET FOODS CORPORATION and
V & V ENTERPRISES, INC., an Ohio corporation,

      Defendants.

---

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

---

THIS MATTER comes before the Court on cross-motions for summary judgment (**#61,
#72**).  Having considered the motions, the responses (**#65, #89**), the replies (**#69, #91**), and the
documentary evidence submitted, the Court finds and concludes as follows.

### I. Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

The Plaintiff, Nestle Prepared Foods Company, has marketed frozen stuffed sandwiches
under the HOT POCKETS®, and LEAN POCKETS®, BREAKFAST POCKETS® and
CROISSANT POCKETS® trademarks.  Nestle Prepared Foods Company asserts claims against
the Defendants, Pocket Foods Corporation and V&V Enterprises, Inc., for trademark
infringement and unfair competition for the alleged marketing of food products under labels of
Pizza Pocket, Breakfast Pocket, Veggie Pocket, Meatball Pocket, and Ham & Cheese Pocket.

The issue presented is whether a trial is required on either of these two claims.

### III.  Material Facts

Although the parties dispute their legal significance, the record establishes certain undisputed facts.  As to the motion filed by the Defendants, Pocket Foods Corporation and V&V Enterprises, Inc., the following material facts are undisputed:

1.      Societe de Produits Nestle, S.A. ("SPN") is the owner of record of the following registered trademarks: HOT POCKETS®, and LEAN POCKETS®, BREAKFAST POCKETS® and CROISSANT POCKETS® .

2.      Nestle Prepared Foods Company ("Nestle") is the exclusive licensee of SPN and these four trademarks.

   3.     The federal registration for the HOT POCKETS trademark contains no disclaimer.

Its registration document provides:

Int. Cl.: 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**   Reg. No. 2,151,684   Registered Apr. 21, 1998

**TRADEMARK**
**PRINCIPAL REGISTER**

**HOT-POCKETS**

CHEF AMERICA, INC. (CALIFORNIA CORPO-
RATION)
20 INVERNESS PLACE EAST
ENGLEWOOD, CO 80112

FOR: PRE-COOKED, READY-TO EAT,
FROZEN BREAD HAVING A FRUIT, MEAT,
CHEESE AND/OR VEGETABLE FILLING, IN
CLASS 30 (U.S. CL. 46).

FIRST USE 7-0-1993; IN COMMERCE
7-0-1993.
OWNER OF U.S. REG. NOS. 1,271,973,
1,566,174, AND 1,909,387.

SER. NO. 75-070,972, FILED 3-11-1996.

BARBARA A. LOUGHRAN, EXAMINING AT-
TORNEY

For example, the mark is used with the following design on the packaged product:



3

4.     The federal registration document for the LEAN POCKETS trademark contains a disclaimer that provides:

Int. Cl.: 30

Prior U.S. Cl.: 46



**United States Patent and Trademark Office**   Reg. No. 1,377,467
Registered Jan. 7, 1986

TRADEMARK
PRINCIPAL REGISTER



GENERAL AMERICAN FOODS MANUFAC-
TURING CORPORATION (CALIFORNIA
CORPORATION)
13010 BRADLEY AVENUE
SYLMAR, CA 91342

FOR: PRE-COOKED, READY-TO-EAT,
FROZEN BREAD HAVING A FRUIT, MEAT,
CHEESE AND/OR VEGETABLE FILLING, IN
CLASS 30 (U.S. CL. 46).

FIRST USE 7-13-1984; IN COMMERCE
7-13-1984.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "POCKETS", APART FROM
THE MARK AS SHOWN.

SER. NO. 493,104, FILED 8-2-1984.

EDWARD NELSON, EXAMINING ATTORNEY

For example, the mark is used with the following design on the packaged product:



4

5.    The federal registration document for the BREAKFAST POCKETS trademark contains a disclaimer that provides:

Int. Cl.: 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**    Reg. No. 1,426,736
Registered Jan. 27, 1987

TRADEMARK
PRINCIPAL REGISTER

BREAKFAST POCKETS

GENERAL AMERICAN FOODS MANUFAC-
TURING CORPORATION (CALIFORNIA
CORPORATION)
13010 BRADLEY AVENUE
SYLMAR, CA 91342

FOR: READY TO EAT FOOD PRODUCTS
MADE WITH A BREAD CRUST FILLED WITH
ANY COMBINATION OF THE FOLLOWING:
MEAT, CHEESE, SAUCES, FRUIT, VEGETA-
BLES, IN CLASS 30 (U.S. CL. 46).

FIRST USE 2-4-1986; IN COMMERCE
2-4-1986.
OWNER OF U.S. REG. NOS. 1,271,973, 1,393,443
AND OTHERS.
NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "BREAKFAST POCKETS",
APART FROM THE MARK AS SHOWN.

SER. NO. 595,425, FILED 4-25-1986.

ALAN DATRI, EXAMINING ATTORNEY

REGISTERED FOR A TERM OF 20 YEARS FROM Jan. 27, 1987

There is no example of this mark in the evidentiary materials submitted.

6.      The federal registration document for the CROISSANT POCKETS trademark

contains a disclaimer and provides:



Int. Cl.: 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**   Reg. No. 1,982,990
                                                Registered June 25, 1996

TRADEMARK
PRINCIPAL REGISTER

CROISSANT POCKETS

CHEF AMERICA, INC. (CALIFORNIA CORPO-
RATION)
9601 CANOGA AVENUE
CHATSWORTH, CA 913141115

FOR: PRE-COOKED, READY-TO-EAT
FROZEN BREAD HAVING A FRUIT, MEAT,
PIZZA AND VEGETABLE FILLING, IN CLASS
30 (U.S. CL. 46).

FIRST USE 8-21-1995; IN COMMERCE
8-21-1995.

OWNER OF U.S. REG. NOS. 1,271,973,
1,859,222, AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE
RIGHT TO USE "CROISSANT", APART FROM
THE MARK AS SHOWN.

SN 74-552,161, FILED 7-21-1994.

ZHALEH DELANEY, EXAMINING ATTOR-
NEY

For example, the mark is used with the following design on the packaged product:



6

As to the motion filed by Nestle, the above stated facts are undisputed.  In addition, the following facts are also undisputed:

7.      V&V Enterprises, Inc. was formed sometime during or prior to 1989.  Pocket Foods Corporation was formed in 2003.[1]

8.      Both Nestle and Pocket Foods manufacture and market stuffed sandwiches consisting of an outer bread crust with a filling inside.

9.      In the early 1990's, V&V Enterprises, Inc. began marketing a Cheese & Pepperoni Pizza Pocket, a Meatball Pocket, a Ham and Cheese Pocket, and a Breakfast Pocket.[2]  The printing labels for these sandwiches contain the Pocket Foods Corporation logo.  V&V Enterprises, Inc. uses "Pocket Foods" as a trade name.

10.     Nestle markets Hot Pockets in the following varieties: Pepperoni Pizza, Meatballs and Mozzarella, and Ham and Cheese.  It previously had marketed sandwiches under the BREAKFAST POCKETS mark, but currently does not sell any products under this mark.

11.     Nestle never authorized Pocket Foods to use any of the four trademarks at issue.

12.     Nestle spends almost $125 million per year advertising and promoting products under its HOT POCKET, LEAN POCKETS and CROISSANT POCKETS trademarks.  Nestle's HOT POCKET, LEAN POCKETS and CROISSANT POCKETS products are available in every region of the United States and have been distributed in grocery stores on a national basis since

---

[1] To the extent practicable, the Court refers to these Defendants collectively as "Pocket Foods." Otherwise, the Court refers to each by their complete name.

[2] Although the Amended Complaint alleges that Pocket Foods sells a Veggie Pocket which infringes upon Nestle's marks, none of the parties presented any evidence that Pocket Foods currently sells such a product.  Therefore, the Court treats this allegation as abandoned by Nestle.

1984.

13.     Both Nestle's and Pocket Foods' representatives have attended trade shows to promote their products.  However, Pocket Foods' representatives have been unable to attend any trade shows since July 2004 because of its struggling financial situation.

14.     Pocket Foods sells its stuffed sandwiches to food service distributors such as SYSCO.  They ultimately are marketed in schools, grocery stores, correctional institutions, and retailers.  It does not sell its products to the military, to convenience stores, or to club stores.

15.     Nestle also sells its stuffed sandwiches through food service distributors such as SYSCO, as well as through grocery chains, "big box" retailers, wholesale distributors and warehouse clubs.  Nestle's products are ultimately marketed in schools, grocery stores, correctional institutions, universities, hospitals, military bases and convenience stores.

16.     According to Brian Young, who is the Vice President and General Manager of Nestle, Nestle's POCKET brand products are often purchased on impulse because they are a convenience food generally purchased by consumers who may have no time to purchase ingredients from a grocery store and prepare a traditional meal from scratch.  These products are frequently placed in the frozen food section of the grocery store.

17.     Carl A. Vennitti, who is the president and CEO of both V&V Enterprises, Inc. and Pocket Foods Corporation, testified during his deposition that stuffed sandwiches such as those marketed by Nestle are "more of an impulse item" when sold in a convenience store.  However, he did not testify, and there is no evidence, that Pocket Foods' stuffed sandwiches are bought on impulse.

18.     When Pocket Foods first began to sell stuffed sandwiches, Mr. Vennitti was aware

of the Hot Pockets brand.  Mr. Vennitti believed that no trademark advice from an attorney was required before calling the sandwiches "pockets" based upon information provided by the United States Department of Agriculture, which had advised him that he could not call the sandwiches "turnovers."

19.     Gerald L. Ford, who is a partner in the marketing research and consulting firm of Ford Bubala & Associates, conducted a survey to address the likelihood of confusion between the products marketed by Nestle and Pocket Foods.  According to his research, approximately 15.73% of potential purchasers believed that the product marketed by Pocket Foods was "put out by Hot Pockets", was "put out with the approval of Hot Pockets", or that there is a business affiliation between the companies (Nestle and Pocket Foods).  Based thereon, he opines that there is a likelihood of confusion.

20.     Mr. Ford conducted the survey in shopping malls in nine states: Arizona, California, Illinois, Maryland, Massachusetts, Minnesota, New Jersey, Tennessee and Texas. Pocket Foods has never sold products labeled with the term "Pocket" in any retail setting in these nine states.

21.     A.C. Nielsen Household Panel Data shows that 34% of households in the United States purchased a POCKETS brand stuffed sandwich during 2005, and 50% of households purchased such sandwiches from 2001 through 2004.

22.     Examples of labels used by Pocket Foods are as follows:





## IV.  Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law determines what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.

11

The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment, which present peculiar problems. Often, parties believe that cross-motions for summary judgment will be considered together, and they simply iterate their own motion as a response to their opponent's.  However, the Tenth Circuit has repeatedly directed that cross-motions for summary judgment be determined independently.  *See Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").  This is because "determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact. . . ."  *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002).  The practice standards are designed for this reason.[3]

---

[3] Nestle's motion and briefs comport with the practice standards.  In contrast, Pocket Foods' motion and response to Nestle's motion do not, which has made it difficult to ascertain Pocket Foods' position.

## V. Motion by Pocket Foods

Pocket Foods argues that Nestle has no standing to pursue its trademark infringement claim because it is a licensee, rather than the registrant, of the trademarks at issue.  It also argues that the term "pocket" was disclaimed by the original registrant and is a generic term which cannot support a trademark infringement or unfair competition claim.  Nestle responds that it has standing to pursue its claims because the term "registrant" includes the registrant's "successors and assigns" and encompasses an exclusive licensee such as Nestle.  It also argues that Pocket Foods has the burden of proving a defense of genericness, and that it has failed to meet its burden by failing to produce any competent evidence to support such defense.

### A.  Standing

When a plaintiff's standing is challenged, it is the plaintiff's burden to establish it.  *See Utah Ass'n of Counties v. Bush,* 455 F.3d 1094, 1100 (10th Cir. 2006).  Thus, this motion challenges Nestle's ability to establish standing.  Standing challenges can be premised upon constitutional or prudential grounds, but Pocket Foods' motion fails to designate a particular deficiency.  Therefore, the Court will analyze both grounds.

To have constitutional standing Nestle must demonstrate that it: (1) suffered an injury in fact; (2) the injury is fairly traceable to the challenged action; and (3) the injury will be redressed by a favorable decision.  *See Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1450 (10th Cir. 1994).  In addition, Nestle must satisfy the following prudential principles: (1) it is asserting its own legal rights; (2) it is not asking the Court to adjudicate a grievance committed to another branch of government; and (3) its complaint falls within the zone of interest intended to be protected by the statute in question.  *See id.* at 1450-51.  Pocket Foods contends that Nestle lacks standing

13

because it is not the "registrant" of the trademarks.  This bears on the first element of both the constitutional and prudential standing analyses.

Pursuant to the Lanham Act, 15 U.S.C. § 1127, the term "registrant" includes "the legal representatives, predecessors, successors and assigns" of a registrant.  Although this statute does not specifically address the status of a trademark's exclusive licensee, courts have uniformly concluded that the exclusive licensee of a trademark has the right to enforce the trademark.  *See, e.g., Novartis Animal Health US, Inc. v. LM Connelly & Sons Pty Ltd.*, 75 U.S.P.Q.2d 1513, 1515-16 (S.D.N.Y. 2005); *cf. Quabug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir. 1977).  Courts reach this conclusion when an exclusive licensee is assigned all rights which accompany the trademark.

As the exclusive licensee of the four trademarks at issue, Nestle is considered a "registrant" with rights to enforce the trademark.  Any infringement upon the trademark results in a personal injury to Nestle for which it may seek redress.  Therefore, Nestle has made a *prima facie* showing of constitutional and prudential standing to proceed with its claims of trademark infringement and unfair competition.

## B.  Genericness Defense

Pocket Foods also contends that Nestle's claim is barred by what has become known as a "genericness defense."  A trademark can become invalid when the mark becomes generic.  *See Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 545 (10th Cir. 2000).  The genericness defense is derived from 15 U.S.C. § 1065(4), which provides: "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered."

As to this defense, Pocket Foods bears the burden of proof by a preponderance of the evidence. *See id.* To prevail on this defense, it must establish, based upon undisputed facts, that the marks at issue are generic. Nestle contends that the evidence produced by Pocket Foods to establish undisputed facts is not competent, therefore it has not established the facts necessary to prove the defense. Nestle therefore requests that Pocket Foods' motion be denied.

The Tenth Circuit has identified five different types of marks: generic marks (which receive no protection), descriptive marks, suggestive marks, arbitrary marks, and fanciful marks. *See Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 924 (10th Cir. 1986) (*Beer Nuts II*); *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 975-76 (10th Cir. 2002). The genericness of a mark is determined based upon whether it pertains to a general class of goods rather than the source of a particular item. *Sally Beauty Co., Inc.,* 304 F.3d at 976.[4]

A mark which contains an "unregistrable component" can be registered with a disclaimer.

---

[4] In contrast, a descriptive mark is one that describes the product; its language "conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *See Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934 (10th Cir. 1983) (*Beer Nuts I*). Such mark receives protection when it has acquired a secondary meaning. *Beer Nuts II,* 805 F.2d at 924. Once a descriptive mark has been registered for a period of 5 years, it cannot be challenged for lack of descriptiveness. *Id.* (citing 15 U.S.C. § 1065). Instead, "such marks are conclusively presumed to be nondescriptive or to have acquired secondary meaning." *Id.*

A suggestive mark, although similar to a descriptive mark, is one which subtly connotes something about the product; it is different from a descriptive mark because it "requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Beer Nuts I,* 711 F.2d at 939 n.5. For this reason, suggestive marks receive even greater protection than descriptive marks. *Beer Nuts II,* 805 F.2d at 924. An arbitrary mark is one which bears no relationship to the product or service with which it is associated. *See Beer Nuts I,* 711 F.2d at 939 n.5. A fanciful mark consists of words which are invented or selected solely for the purpose of functioning as a trademark. *Sally Beauty Co., Inc.,* 304 F.3d at 976. Suggestive, arbitrary and fanciful marks are entitled to trademark protection because they are inherently distinctive. *Id.*

The Court notes that the four marks at issue are obviously not arbitrary or fanciful marks because they bear a relationship to the marketed products – "pockets" of bread containing various fillings which are heated before they are eaten. Therefore, if not generic, then they either are descriptive marks or suggestive marks. If descriptive marks, they have existed for more than 5 years and therefore cannot be challenged for lack of description.

15

15 U.S.C. § 1056(a).  For instance, a mark which is not generic as a whole, but which contains generic terms, can be registered with a disclaimer of the generic terms.  *See In re Wada*, 194 F.3d 1297, 1301 (Fed. Cir. 1999).

The only evidence submitted in support of this defense are references in the motion to website addresses and printouts of computer screenshots of various websites.  There are no accompanying affidavits or other evidence which would lay the appropriate foundation to make references to the website addresses or screenshots admissible under the Federal Rules of Evidence.  Therefore, Pocket Foods has produced no competent evidence to show that Nestle's four trademarks pertain to a general class of goods rather than the source of particular items.  *See* Fed. R. Civ. P. 56(e).

To the extent that Pocket Foods relies upon the disclaimers in the trademarks themselves, the disclaimers are insufficient to establish the defense.  First, there is no evidence as to why the terms were disclaimed, so the Court cannot presume that any disclaimed term is generic.  Second, and more importantly, disclaimed terms – even if generic – are considered to be part of the mark which is considered as a whole when a claim of trademark infringement is asserted.  *See Sally Beauty Co., Inc.*, 304 F.3d at 972 n.1; *see also Universal Money Ctrs., Inc. v. AT&T*, 22 F.3d 1527, 1531 (10th Cir. 1994).  Thus, the disclaimers are not evidence that the marks as a whole have become generic since registration.

The absence of evidence to support Pocket Foods' defense presents a circumstance that demonstrates the difference between motions for summary judgment brought by the party with the burden of proof and those brought by the party without the burden.  Had Nestle challenged Pocket Foods' ability to establish its defense and Pocket Foods failed to produce sufficient

16

competent evidence to establish a *prima facie* defense, then the defense would be dismissed. *See Celotex*, 477 U.S. at 322-23. However, because this issue arises in the context of Pocket Foods' motion, its failure to submit competent evidence results in denial of its motion.

## VI.  Motion by Nestle

In its summary judgment motion, Nestle contends that there is no genuine dispute as to any fact material to its claims and that it is entitled to judgment as a matter of law on its claims of trademark infringement and unfair competition on which it has the burden of proof. To prove trademark infringement, Nestle must establish that: (1) it owns "validly registered" trademarks; (2) it never authorized Pocket Foods to use the marks; and (3) the products marketed by Pocket Foods are likely to cause confusion in the marketplace. *See Big O Tires, Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1222 (D.Colo. 2001); *see also* 15 U.S.C.  § 1114.[5]  Similarly, to prove unfair competition, Nestle must establish that: (1) its mark is protectable; and (2) Pocket Foods' products are likely to cause confusion among consumers. *See Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d

---

[5] 15 U.S.C. § 1114 provides, in relevant part:
(1) Any person who shall, without the consent of the registrant--
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
shall be liable in a civil action by the registrant for the remedies hereinafter provided. . . .

628, 638 (7th Cir. 2001)); 15 U.S.C. § 1125(a).[6]  These are subsumed within elements 1 and 3 of

the trademark infringement claim.  *See Packman*, 267 F.3d at 638 n.8.  Therefore, if Nestle

proves trademark infringement, then it necessarily has proved unfair competition.

In its response, Pocket Foods contends that Nestle does not own the trademarks it seeks

to enforce, and that Pocket Foods' products do not infringe upon the four registered marks at

issue because there is no likelihood of confusion by consumers in the marketplace.  Pocket Foods

further contends that Nestle cannot prevail on its claims because: (1) Nestle lacks standing to

proceed on its claims for the same reasons previously addressed; (2) Nestle has disclaimed the

marks at issue; and (3) the Court lacks personal jurisdiction over Pocket Foods.

Nestle bears the burden of proof on its substantive claims for trademark infringement and

unfair competition, both of which are asserted under the Lanham Act.  As noted earlier, it also has

the burden of proof with regard to standing.  *See Utah Ass'n of Counties,* 455 F.3d at 1100.  To

the extent that Pocket Foods reargues its genericness defense, it bears the burden of proof.

Nestle has the burden of proving personal jurisdiction.  *Soma Medical Intern. v. Standard*

---

[6] This statute provides in relevant part:
(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

18

*Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

## A. The Lanham Act Claims

The issue presented by Nestle's motion is whether there is a genuine dispute as to any fact material to Nestle's claims. If so, then a trial is required. If not, then the Court applies the law to the undisputed facts.

Pocket Foods has presented no evidence that creates a genuine dispute as to a fact material to any element of Nestle's claims, other than the likelihood of confusion. As to that, the only evidence Pocket Foods has presented is the affidavit and deposition testimony of Mr. Vennitti. These do not contradict any evidence presented by Nestle; they pertain only to the significance of the market research report of Mr. Ford. With regard to the market research report, the Court gives Pocket Foods' evidence complete deference. As a result, there is no genuine dispute as to any fact material to Nestle's claims and no trial is required on them.

The Court next applies the law to the undisputed facts. Element 1 of both claims is established because Nestle is the exclusive licensee of the marks at issue.[7] As such, it is the

---

[7] Although the parties agree that the BREAKFAST POCKETS mark exists and that Nestle is the exclusive licensee of this mark, they have both overlooked the significance of the fact that the mark is no longer in use. There is no evidence stating when Nestle ceased marketing products under the BREAKFAST POCKETS mark. Nestle executive Brian Young provided two affidavits on different dates which have different information in this regard. The first affidavit was submitted in response to Pocket Foods' summary judgment motion on June 2, 2006; it states that products under the BREAKFAST POCKETS mark have been distributed nationally since February 1986. The second affidavit was submitted in support of Nestle's motion 28 days later on June 30, 2006; it states that products are no longer sold under that mark. Because cross-motions for summary judgment are considered independently, *see* discussion *supra*, at this juncture the Court considers the evidence provided by Nestle in support of its motion, rather than the evidence it provided in opposition to Pocket Foods' motion.

Because Nestle does not currently use the BREAKFAST POCKETS mark, there can be no infringement of this mark. *See United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97-98 (1918). This is because "the right to a particular mark grows out of its use" and the purpose of a trademark is to protect the goodwill associated with a product in the marketplace. *Id.*; *see also General Healthcare Ltd. v. Qashat,* 364 F.3d 332, 334-35 (1st Cir. 2004); *International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco,* 329 F.3d 359, 364 (4th Cir. 2003); *Buti v. Perosa, S.R.L.,* 139 F.3d

"registrant," or owner, of the marks and may sue to enforce them.  Pocket Foods concedes

element 2 of the trademark infringement claim.  Therefore, the Court turns to whether there is a

likelihood of confusion in the marketplace, which is element 3 of the trademark infringement claim

and element 2 of the unfair competition claim.

The likelihood of confusion is generally considered a question of fact, but the Tenth

Circuit Court of Appeals has stated that this issue is "amenable to summary judgment in

appropriate cases."  *See Sally Beauty Co., Inc.*, 304 F.3d at 972.   An appropriate case is one in

which there is no genuine dispute as to the facts material to the likelihood of confusion.  *See id.*

This is such a case.

To determine whether there is a likelihood of confusion, the Court considers a number of

non-exclusive, interrelated factors: (1) the degree of similarity between the challenged product

and the trademark in appearance, pronunciation of the words used, verbal translation of the

pictures or designs involved, and/or suggestion; (2) the intent of the defendant in marketing the

challenged product; (3) the manner in which the parties use or market their respective goods;

(4) the degree of care likely to be exercised by purchasers of the marketed products; (5) evidence

---

98, 103 (2d Cir. 1998).  Indeed, the term "trademark" is defined by 15 U.S.C.A. § 1127 as follows:
>     The term "trademark" includes any word, name, symbol, or device, or any
>     combination thereof--
>         (1) used by a person, or
>         (2) which a person has a bona fide intention to use in commerce
>         and applies to register on the principal register established by this
>         chapter,
>     to identify and distinguish his or her goods, including a unique product,
>     from those manufactured or sold by others and to indicate the source of
>     the goods, even if that source is unknown.
Because the BREAKFAST POCKETS mark is not used by Nestle, and there is no evidence that it has a
bona fide intention to use this mark in the future, Nestle has not shown infringement of this mark.

of actual confusion on the part of consumers; and (6) the strength or weakness of the marks.  *See Beer Nuts II,* 805 F.2d at 925; *Universal Money Centers, Inc.*, 22 F.3d at 1530.  No single factor is dispositive.  *See Universal Money Centers, Inc.*, 22 F.3d at 1530.  Depending upon the facts and circumstances of a given case, some factors may have more relevance than others.  *See Heartsprings, Inc. v. Heartspring, Inc.,* 143 F.3d 550, 554 (10th Cir. 1998).  However, in every case, the inquiry is whether a consumer is "likely to be deceived or confused by the similarity of the marks."  *See id.* (internal quotes and citations omitted).

**Strength of the Marks**: Nestle spends $125 million each year in marketing products under its HOT POCKETS, LEAN POCKETS and CROISSANT POCKETS trademarks, and these marks are well-established.  As the Nielsen data shows, half of all households bought a POCKETS brand stuffed sandwich between 2001 and 2004, and a third of all households bought such sandwiches in 2005.  No evidence was presented as to how well-established Pocket Foods' products are in the marketplace.  Therefore, their relative strength cannot be compared.

**Similarity between the Products and Marks**: All of the products marketed by Pocket Foods and described by Nestle's marks are stuffed sandwiches consisting of a bread crust with a filling inside.  The fillings are described by the title of each product, *i.e.,* cheese and pepperoni.

The names of the Pocket Foods products are dissimilar from Nestle's four marks in font type and general appearance, however, the names are otherwise substantially similar and convey the same meaning:

| Pocket Foods | Nestle |
|---|---|
| Cheese & Pepperoni Pizza Pocket | Pepperoni Pizza Hot Pocket |
| Meatball Pocket | Meatballs and Mozzarella Hot Pocket |
| Ham and Cheese Pocket | Ham and Cheese Hot Pocket |

There is no apparent similarity between Pocket Foods' products and Nestle's CROISSANT POCKETS and LEAN POCKETS marks, because there is no evidence that Pocket Foods uses the words "croissant" or "lean" with regard to any of its products.  There is no evidence that Pocket Foods produces or sells a "croissant" sandwich or a low-calorie or "lean" sandwich.

**Manner of Marketing**: Pocket Foods' marketing techniques have changed over the years to accommodate the economic viability of its business.  In the past, both parties attended trade shows, but Pocket Foods has not attended a trade show since July 2004 due to budgetary constraints.  Pocket Foods markets sandwiches in fewer geographic areas than Nestle, which sells its products in every region of the United States.

However, as to geographic area where the products of both parties are present, they sell to the same markets.  Both distribute through SYSCO, sell products in grocery stores, and distribute to schools and correctional institutions.  However, unlike Nestle, Pocket Foods sells no products to the military, to convenience stores, or to club stores.  Therefore, there is substantial, but not complete, overlap in the parties' respective markets.

**Degree of Care Exercised by the Consumer**: There is little evidence as to the degree of care exercised by purchasers in selecting between the parties' products.  The evidence that shows that Nestle's POCKETS brand sandwiches are bought on impulse.  It also shows that stuffed sandwiches, when sold in a convenience store, are generally bought on impulse.  However, this fact has limited relevance because Pocket Foods does not sell its products in convenience stores, and thus there is no evidence as to whether the purchase of Pocket Foods' products is based on impulse.

**Evidence of Actual Confusion**: As evidence of actual confusion in the marketplace, Nestle offers a survey prepared by Mr. Ford showing that 15.73% of potential purchasers believed the products marketed by Pocket Foods were "put out by Hot Pockets" or "with the approval of Hot Pockets," or that there was an affiliation between the companies marketing these products. Pocket Foods has challenged Mr. Ford's opinion because the survey was conducted in states where Pocket Foods' products were not sold in a retail setting.

Giving maximum credence to the objection, it diminishes the import of the survey but does not render it meaningless. It is not clear from what source consumers learned of the parties' products. Confusion can exist even where the products do not sit side by side on the shelf in the same store. Confusion can arise from consumers' recollections of past purchases. Therefore, although the consumers surveyed were not confronted with an imminent choice between the products, a significant number did not recognise a distinction between them.

**Intent of Pocket Foods**: When Pocket Foods first began to sell stuffed sandwiches, it was aware of the HOT POCKETS brand but chose not to retain an attorney to investigate any potential trademark violations. It assumed that there would be none based upon information obtained through the United States Department of Agriculture. Construing the evidence most favorably to Pocket Foods, the Court does not conclude that Pocket Foods intended to usurp the goodwill and reputation of Nestle's products. However, by making the assumption that there would be no trademark violation without obtaining legal advice, Pocket Foods proceeded in disregard of Nestle's trademarks.

**Conclusion**: The Court considers the most relevant factors to be the similarity of the marks and products, the marketing of the products, Pocket Foods' intent, evidence of actual

confusion, and the strength of Nestle's marks.  The degree of care likely to be exercised by consumers is less significant because there is no evidence of the degree of buyer impulsivity in a market where the competing products are sold.

In a side-by-side comparison, the product and the names of three Pocket Foods' products (Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket) are almost identical to the names of products sold under the HOT POCKETS mark (Pepperoni Pizza Hot Pocket, Meatballs and Mozzarella Hot Pocket, Ham and Cheese Hot Pocket).  A consumer in the marketplace could easily believe, and a significant number actually do believe, that Pocket Foods' products are endorsed, or even manufactured, by Nestle as the owner of the HOT POCKETS mark.

This would not be of great concern if the parties sold their products in distinct markets. However, the evidence demonstrates that their markets overlap to a substantial degree.  In geographic areas where both products are present, they are marketed through SYSCO and appear in grocery stores, and to schools and correctional institutions.  Although the Court does not infer that Pocket Foods intended to derive a benefit from Nestle's products in selecting the names of its products, the evidence demonstrates its awareness but absolute disregard of Nestle's marks.

The Court therefore finds that there is a significant likelihood that consumers will be confused by Pocket Foods' products (Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket) in markets where HOT POCKETS products are present.

With regard to Nestle's BREAKFAST POCKETS mark, the Court finds no infringement because Nestle is no longer selling this product.  The Court also finds no infringement of the CROISSANT POCKETS and LEAN POCKETS marks because there is no similar product

marketed by Pocket Foods.

## B. Standing

With regard to Pocket Foods' motion, Nestle made a *prima facie* showing of its standing. In the context of its motion, Nestle has made the same showing.  In response, it is Pocket Foods' burden to demonstrate a genuine dispute as to a material fact.  It has not done so.  Therefore, there is no need for a trial with respect to standing.  Nestle, as the exclusive licensee of the trademarks, has standing to enforce them.

## C.  Impact of Disclaimers

Pocket Foods does not specifically state how Nestle's disclaimers in three of its trademarks affect Nestle's claims.  In the context of Pocket Foods' summary judgment motion, it raised the disclaimers in conjunction with its genericness defense.  Because no other purpose is articulated by Pocket Foods, the Court assumes that Pocket Foods asserts the genericness defense in conjunction with this motion, as well.

In the context of Nestle's motion, Pocket Foods has the burden to demonstrate by sufficient, competent evidence that there is a genuine dispute as to a material fact which requires a trial on Nestle's claims.  As noted *supra*, Pocket Foods has submitted no competent evidence on its defense, therefore there is no factual issue requiring a trial.

## D.  Personal Jurisdiction

Nestle's motion does not address personal jurisdiction.  This issue was raised by the response.  In reply, Nestle contends that the issue of personal jurisdiction was already determined and is the law of the case.

Nestle's position is apparently based upon a misunderstanding of the Court's oral order

issued on June 6, 2005 **(#20)** with regard to Pocket Foods Corporation's motion to dismiss

Nestle's claims for lack of personal jurisdiction **(#8)**.[8]  At the June 6 hearing, the Court advised

the parties that they could either proceed based upon what they submitted in conjunction with the

motion, in which event the Court would review it "on a facial basis," or they could present

evidence.  The advisement derives from the analytical framework endorsed in *FDIC v. Oaklawn*

*Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).[9]

Pocket Foods Corporation opted to proceed on its papers.  The written submissions

contained conflicting evidence.  Therefore, construing the evidence most favorably to Nestle, the

Court determined only that Nestle had made a *prima facie* showing of personal jurisdiction, and

denied the motion.  The Court reserved final determination of personal jurisdiction until trial. This

remains as the only issue to be tried in this case.

**IT IS THEREFORE ORDERED** that:

(1)    Pocket Foods' motion for summary judgment **(#61)** is **DENIED**.

(2)    Nestle's motion for summary judgment **(#72)** is **GRANTED IN PART** and

**DENIED IN PART**.  There is no genuine dispute as to a material fact with regard

to the merits of Nestle's claims of trademark infringement and unfair competition.

The only issue which requires a trial is whether this Court has personal jurisdiction

---

[8] At that juncture, the sole Defendant was Pocket Foods Corporation.  Therefore, the issue of personal jurisdiction was not raised as to V&V Enterprises, Inc.  After it was added as a Defendant, V&V Enterprises, Inc. preserved this defense in its Answer **(#50)**.

[9] In *Oaklawn*, the Tenth Circuit advises that a motion to dismiss for lack of personal jurisdiction can be handled in two ways.  A court may hold an evidentiary hearing at which the plaintiff must prove, by a preponderance of the evidence, that there is personal jurisdiction over the defendant.  *Id.*  Alternatively, a court may determine whether the plaintiff made a *prima facie* showing of personal jurisdiction based upon the affidavits and evidence submitted, and if so, reserve the ultimate determination of jurisdiction for trial. *Id.*

over Pocket Foods.  Assuming that the Court has personal jurisdiction over Pocket Foods, Nestle would be entitled to an injunction prohibiting Pocket Foods from using the Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket names on its products in all markets where Nestle sells the Pepperoni Pizza Hot Pocket, Meatballs and Mozzarella Hot Pocket, Ham and Cheese Hot Pocket products.

(3)     The trial set for **January 8, 2007** is **VACATED**.  A law and motion hearing is set for **December 13, 2006 at 4:30 p.m.**  At such hearing, the parties shall be prepared to address: (a) the scheduling of a bench trial as to personal jurisdiction; and (b) the length of such trial.

(4)     Within 10 days prior to the hearing, the parties shall submit a proposed form of judgment.

Dated this 19th day of October, 2006

**BY THE COURT:**

Marcia S. Krieger
United States District Judge