IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-02533-MSK-MEH

NESTLE PREPARED FOODS COMPANY,

    Plaintiff,

v.

POCKET FOODS CORPORATION and
V & V ENTERPRISES, INC., an Ohio corporation,

    Defendants.

---

**ORDER ON THE COURT'S EXERCISE OF
PERSONAL JURISDICTION OVER THE DEFENDANTS**

---

THIS MATTER came before the Court for an evidentiary hearing on March 22, 2007 on the sole issue of whether the Court may properly exercise personal jurisdiction over the Defendants.[1] Having considered the evidence presented by the parties, the stipulated facts, and the arguments of counsel, the Court finds and concludes as follows.

### I. Subject Matter Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Issue Presented

When the Plaintiff commenced this action, the sole Defendant named in the Complaint was Pocket Foods Corporation. Pocket Foods Corporation filed a motion **(#8)** asking the Court to dismiss claims against it for lack of personal jurisdiction. On June 6, 2005, the Court issued an

---

[1] When practicable, the Court refers to each party by name. Otherwise, the Court refers to them as the Plaintiff or the Defendants.

oral ruling denying the motion, because the Plaintiff had made a *prima facie* showing that the exercise of personal jurisdiction was proper. The Court then reserved, for trial, the ultimate determination of whether the Court could properly exercise jurisdiction over Pocket Foods Corporation.

The Plaintiff then filed an Amended Complaint, adding V & V Enterprises, Inc. as a Defendant. In answering the Amended Complaint, both Defendants claimed that the Court lacks personal jurisdiction over them. Neither filed a motion addressing the issue.

Last October, the Court granted, in part, the Plaintiff's motion for summary judgment on its trademark infringement claims. The Court concluded that three of the Defendants' sandwich products – Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket – infringed upon the Plaintiff's Hot Pockets trademark. Thus, no trial is required on the Plaintiff's trademark infringement claim. Now, the only issue remaining in this matter is whether the Court may properly exercise personal jurisdiction over the Defendants.

### III. Findings of Fact

The Plaintiff, Nestle Prepared Foods Company, is a Pennsylvania corporation with a principal place of business in Ohio. The Defendants, Pocket Foods Corporation and V & V Enterprises, Inc., are Ohio corporations with principal places of business in Ohio.[2]

V & V Enterprises, Inc. has existed since 1979. It manufactures and markets various food products in its plant located in Ohio. Among its products are several sandwich products,

---

[2] At the hearing, evidence of Pocket Foods Corporation's incorporation was admitted, but no evidence of Nestle's or V & V Enterprises, Inc.'s incorporation was offered. Presumably, this is because the Defendants admitted the Amended Complaint's allegations in this regard in their Answers. For purposes of this ruling, the Court takes judicial notice of these admissions.

including the Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket, which are at the center of this lawsuit. In doing so, it often uses the trade name "Mauro Brand Products." Pocket Foods Corporation is a separate corporation which came into formal existence on May 7, 2004.

V & V Enterprises, Inc., has advertised its products at food shows, but none of the food shows have taken place in Colorado. V & V Enterprises, Inc., has never requested to do business in Colorado, and has sold no products in Colorado.

Carl Vennitti is the president and chief executive officer of both Pocket Foods Corporation and V & V Enterprises, Inc. Often, Mr. Vennitti has not observed any formal distinction between the two entities. V & V Enterprises, Inc., does business as "Pocket Foods." A flyer which V & V Enterprises, Inc., distributed at a 2004 food show, entitled "We Are Feeding the Future," bears the Pocket Foods Corporation logo and advertises the pizza pocket sandwiches sold by V & V Enterprises, Inc. In October 2004, as president of Pocket Foods Corporation, Mr. Vennitti wrote a letter on Pocket Foods Corporation letterhead to Nestle's counsel, stating: "We have owned the web sites pizzapocket.com, .org, .biz, and .net since 1999 with great success in marketing our products." A customer list for V & V Enterprises, Inc., dated July 22, 2005, is entitled "Pocket Foods Customer List."

Both Defendants operated a website at www.pizzapocket.com from 2000 until February 2005.[3] The website contained advertisements for several "Mauro Brand Products," including the Ham and Cheese Pocket, the Meatball Pocket, and the Pizza Pocket. The website had hyperlinks

---

[3] This is a stipulated fact. Thus, to the extent that the Defendants now contend that the website was operated only by V & V Enterprises, Inc., the Court rejects such contention.

3

to pages entitled "How to Buy," "Who We Are," "Contact Us," and "Home."  The "How to Buy" page contained a map of the United States. Colorado was one of eleven states that were highlighted on a national map.  The instructions on the "How to Buy" page stated: "We distribute all Mauro Brand Products through our exclusive distributors.  For information on how to contact the distributor in your area to obtain Pizza Pockets and other delicious Mauro Products, please click on your state below."  By clicking on the state of Colorado, the user was redirected via a hyperlink to another web page on which the exclusive distributor in Colorado was identified as:

> **Colorado**
>
> PPS Inc.
> 44 Lookout Mtn. Cir.
> Golden, CO 80401
>
> **Phone: (303) 526 1983**
> **Toll Free: 1-800-850 6694**
> **e-mail: PPS_INC@worldnet.att.net**

PPS Inc. stands for "Paradise Professional Services, Inc."  PPS Inc. was formed in 1998 by Carl Vennitti's brother, David, and David's wife, Laura Forrest.  PPS was intended to provide technical services, but during its entire existence, has never done any business.  According to Ms. Forrest, neither she nor her husband knew that PPS had been listed as the Colorado distributor on the pizzapocket website, nor that her home address, phone number or email address were part of the listing.  PPS has never distributed any Mauro product.  Indeed, the pizzapocket website generated no sales from Colorado.

The Defendants' sole contacts with the State of Colorado were through its now-dismantled website and designated exclusive distributor.

## IV. Conclusions of Law

Nestle contends that specific personal jurisdiction over the Defendants can properly be exercised by this Court through application of the Colorado Long Arm Statute, § 13-1-124, C.R.S.  Pursuant to such statute, Nestle contends that the Defendants' operation of the pizzapocket website constituted a purposeful and significant contact with the State of Colorado. The Defendants resist the exercise of personal jurisdiction, contending that: (1) neither Defendant purposefully availed itself of Colorado as a forum for conducting business; (2) the website was operated by V & V Enterprises, Inc., but not by Pocket Foods Corporation; and (3) any contact with the State of Colorado was insignificant, because neither Defendant marketed nor sold any products in Colorado.

The Plaintiff bears the burden of proving that the Court has personal jurisdiction over the Defendants by a preponderance of the evidence.  *See FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).  A determination of whether a court has personal jurisdiction involves a two-step analysis.  First, when a plaintiff's claim arises under a federal statute, the Court examines whether the statute "potentially confers jurisdiction by authorizing service of process on the defendant."  *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006).  If the statute is silent on the issue of service, then Fed. R. Civ. P. 4(k)(1)(A)[4] refers this Court to the Colorado long-arm statute, which extends personal service to the maximum extent permitted by the Due

---

[4] Rule 4(k)(1)(A) provides:
   (k) Territorial Limits of Effective Service.
      (1) Service of a summons or filing a waiver of service is effective
     to establish jurisdiction over the person of a defendant
         (A) who could be subjected to the jurisdiction of a court
        of general jurisdiction in the state in which the district
        court is located . . . .

Process Clause of the Fourteenth Amendment to the United States Constitution. *See id.; see also Brownlow v. Aman*, 740 F.2d 1476, 1481 (10th Cir. 1984).

Second, the Court examines whether the exercise of personal jurisdiction would comport with due process. *See Trujillo*, 465 F.3d at 1217. Due process is satisfied if there have been sufficient minimum contacts between a defendant and the forum state, to say that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In this analysis, the Court considers whether a defendant has purposefully directed its activities at residents of the forum state, whether the contacts are significant and whether the asserted claims arise out of that purposeful direction of activity. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). Then the Court determines whether the exercise of jurisdiction is reasonable. *See Trujillo*, 465 F.3d at 1221. Reasonableness requires the Court to balance five factors: (1) the burden on the defendant to litigate in this forum; (2) Colorado's interest in resolving the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the efficient resolution of the claims; and (5) the shared interest of the States in furthering substantive social policies. *See id.*; *see also OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1095 (10th Cir. 1998).

In this case, Nestle's claims arise under the Lanham Act, which does not provide for nationwide service of process. Therefore, the Court turns to the Colorado long-arm statute. Colorado's long-arm statute provides that a non-resident party subjects itself to the jurisdiction of Colorado's courts in specific circumstances, for example when the non-resident has committed "a

tortious act within this state." § 13-1-124(1)(b), C.R.S.[5]

It is well-established that trademark infringement is a tortious act for purposes of state long-arm statutes.  In *Whitney Information Network, Inc. v. XcentricVentures, LLC,* 347 F. Supp. 2d 1242, 1244-45 (M.D. Fla. 2004), the district court concluded that the publication of infringing marks on a website which was "beyond a mere passive website" amounted to the commission of a tortious act in Florida for purposes of the Florida long-arm statute.  Likewise, in *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.,* 327 F. Supp. 2d 1032, 1043 (E.D. Mo. 2004), the district court determined that the publication of trademark-infringing marks on a highly interactive website was a tort, and that it occurred in the state where the trademark owner had its principal place of business.  A similar result was reached in *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F. Supp. 886, 888-89 (S.D.N.Y. 1974), except that the trademark infringement consisted of the distribution of catalogs in the forum state; this constituted a tortious act for purposes of the New York long-arm statute.  Like these other courts, this Court agrees that trademark infringement constitutes a "tortious act" for purposes of the Colorado long-arm statute.

The Court has already determined that the Defendants have infringed upon the Plaintiff's trademark by marketing their Cheese & Pepperoni Pizza Pocket, Meatball Pocket, and Ham and Cheese Pocket sandwiches. Trademark infringement does not require that there be any sale of the infringing product, only the marketing of a product which is likely to cause confusion in the marketplace with regard to similar products marketed under a valid trademark.  *See Big O Tires,*

---

[5] This is the sole provision of the Colorado long-arm statute relied upon by the Plaintiff in support of personal jurisdiction in this case. Previously, the Plaintiff also argued that the Defendants transacted business in Colorado and were subject to the Court's jurisdiction under § 13-1-124(1)(a), C.R.S. At the hearing, they abandoned this argument.

*Inc. v. Bigfoot 4X4, Inc.*, 167 F. Supp. 2d 1216, 1222 (D.Colo. 2001); *see also* 15 U.S.C. § 1114; *Pilates, Inc. v. Pilates Institute, Inc.*, 891 F. Supp. 175, 180 (S.D.N.Y. 1995) (trademark infringement occurs where the attempt to pass off the infringing goods occurs; no sale is required).

Thus, the tort of trademark infringement occurred in Colorado when the Defendants marketed their products for products for sale in Colorado through an exclusive distributor located in Golden, Colorado. Because the tort arises from marketing of the product, the fact that no sale resulted is irrelevant.

The Colorado long-arm statute being satisfied, the Court next determines whether the exercise of personal jurisdiction over the Defendants would comport with due process. In order to comport with due process, the Defendants must have sufficient and purposeful minimum contacts with Colorado.

The Defendants had only two contacts with the State of Colorado – operation of the pizzapocket website and designation of an exclusive distributor in Colorado. When a plaintiff premises an assertion of personal jurisdiction upon a defendant's operation of a website, courts often distinguish among three types – passive websites, moderately interactive websites, and interactive websites. *See Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1296-99 (10th Cir. 1999). A passive website provides no interaction between the web-surfer and the webmaster – it simply posts information for interested viewers to read. A passive website, alone, does not provide sufficient minimum contacts to support personal jurisdiction. At the middle of the spectrum are moderately interactive websites which allow for some exchange of information. For websites in this middle range, the Court considers the degree of interactivity and

the commercial nature of the exchange of information which can occur on the website. *See Boppy Co. v. Luvee Products Corp.*, 72 U.S.P.Q.2d 1577, 1579 (D. Colo. 2004). At the far end of the spectrum are interactive websites which allow for the knowing and repeated transmission of computer files over the internet. Highly interactive websites usually provide sufficient minimum contacts to support the exercise of specific personal jurisdiction over their operators. *See Soma*, 196 F.3d at 1296 (citation and quotation omitted).

Here, the parties agree that the website was moderately interactive. The pizzapocket website allowed users to place orders with identified, exclusive distributors, by use of a hyperlinked e-mail addresses, or by telephone. Thus, it allowed for prospective buyers to engage in simple commercial transactions by electronic means. Again, whether it resulted in sales is not important; it was a contact sufficient to facilitate the placing of an order for sale of the Defendants' products.

The Defendants' intent to market in Colorado was purposeful. The website specifically targeted prospective buyers in Colorado and at least 11 other states. Indeed, as noted by Carl Vennitti in his letter to Nestle's counsel, "We have owned the web sites pizzapocket.com, .org, .biz, and .net since 1999 with great success in marketing our products." The fact that the distributor in Colorado did not know that it had been identified as such is immaterial, because question of purpose focuses on the intent of the Defendants, not the distributor. Similarly, the fact that no products were sold does not bear on the intent of the Defendants to market in Colorado.

The Court concludes that the Defendants purposefully availed themselves of the benefits and protections of the State of Colorado when they specifically offered their products for sale

9

through an exclusive distributor located in Golden. The Defendants could reasonably anticipate being haled to answer a civil complaint against them in this forum, based upon their specific contacts. The Plaintiff's claim of trademark infringement arises from Defendants' purposeful marketing by means of their website.

Finally, the Court considers whether the exercise of personal jurisdiction is reasonable. Because the Defendants are not located in Colorado, this litigation has placed a burden on them. However, the litigation is close to conclusion and there are few, if any, further expenses to be borne by the Defendants. Upon a determination of personal jurisdiction, the entire controversy will be resolved. In contrast, a determination of lack of personal jurisdiction will necessitate a new action in a new forum giving rise to a host of new litigation expenses. Because the action is premised upon federal law rather than state law, the interest of Colorado in its resolution is somewhat lessened. However, Colorado retains an interest in serving as the forum for resolution of disputes arising from torts committed within its boundaries. Because infringement has already been determined, the shared interest of the States will be advanced by the speedy entry of a permanent injunction in this action. Thus, the Court concludes that exercise of personal jurisdiction over the Defendants is reasonable.

In summary, the Court concludes that service of process was proper under the Colorado long-arm statute, and exercise of personal jurisdiction over the Defendants comports with due process and is reasonable. This being the only remaining issue in the case,

**IT IS THEREFORE ORDERED** that judgment enter against the Defendants in accordance with the findings and conclusions of this Court's ruling on Plaintiff's motion for summary judgment **(#95)**.

Dated this 5th day of April, 2007

BY THE COURT:

Marcia S. Krieger
United States District Judge